# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                                Plaintiff,        :        Case No. 3:17-cr-100

                                                         District Judge Thomas M. Rose
   - vs -                                         Magistrate Judge Michael R. Merz

DASHAWN J. SMEDLEY,

                                Defendant.      :

## REPORT AND RECOMMENDATIONS

This criminal case is before the Court on Defendant's Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 37). As with all other habeas corpus and § 2255 motions at Dayton, the matter has been referred to the undersigned pursuant to General Order DAY 13-01.

The Motion is before the Court for initial review pursuant to Rule 4(b) of the Rules Governing ' 2255 Proceedings which provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States to file an answer, motion, or other response within a fixed time, or take other action the judge may order.

Defendant claims he is entitled to immediate release because all of his sentence except for one day was imposed for a violation of 18 U.S.C. § 924(c) and he no longer qualifies for such a sentence because the FIRST STEP Act has made it clear that 924(c) only applies to repeat offenders.

Defendant is correct about the terms of his imprisonment sentence. Judge Rose imposed one day on Count 1 and sixty months on Count 5 to run consecutively (Judgment, ECF No. 34, PageID 91).

Smedley claims the benefit of the Sentencing Reform and Corrections Act of 2017, S. 1917, 115th Cong. § 104 (2017), apparently believing that section of S. 1917 became law as part of the FIRST STEP Act. It did not. As introduced by Senator Charles Grassley on October 4, 2017, § 104 reads:

(a) IN GENERAL.—Section 924(c)(1)(C) of title 18, United States Code, is amended, in the matter preceding clause (i), by striking "second or subsequent conviction under this subsection" and inserting "violation of this subsection that occurs after a prior conviction under this subsection has become final".

(b) APPLICABILITY TO PENDING AND PAST CASES.—

(1) PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

(2) PAST CASES.—

(A) SENTENCE REDUCTION.—

(i) IN GENERAL.—In the case of a defendant who, before the date of enactment of this Act, was convicted of an offense for which the penalty is amended by this section and was sentenced to a term of imprisonment for the offense, a term of imprisonment may be reduced only if—

(I) the instant violation was for a drug trafficking offense that did not involve a violation of clause (ii) or (iii) of section 924(c)(1)(A) of title 18, United States Code;

>>(II) the defendant has not otherwise been convicted of any serious violent felony; and

>>(III) the sentencing court, on motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, upon prior notice to the Government, after considering the factors set forth in section 3553(a) of title 18, United States Code, the nature and seriousness of the danger to any person, the community, or any crime victims, and the post-sentencing conduct of the defendant, finds a reduction is consistent with this section and the amendments made by this section.

>(ii) REQUIREMENT.—Any proceeding under this subparagraph shall be subject to section 3771 of title 18, United States Code (commonly known as the "Crime Victims' Rights Act").

>(B) REQUIREMENT.—For each motion filed under subparagraph (A), the Government shall conduct a particularized inquiry of the facts and circumstances of the original sentencing of the defendant in order to assess whether a reduction in sentence would be consistent with this section and the amendments made by this section, including a review of any prior criminal conduct or any other relevant information from Federal, State, and local authorities.

Thus, it does not include the language quoted by Smedley in his Motion which purports to clarify the meaning of 924(c) as applying only to repeat offenders. More importantly, § 104 of S. 1917 did not become law as part of the FIRST STEP Act. Whatever relief Senator Grassley's sentencing reform proposals may eventually provide for persons in Smedley's position, it does not provide any relief now because it has not become the law.[1] At the time Smedley was sentenced and as of the date of this Report, 18 U.S.C. § 924(c) provides a mandatory minimum sentence of sixty months (five years) imprisonment.

In addition to his principal argument about the FIRST STEP Act, Smedley makes claims of ineffective assistance of trial counsel. He claims he took the plea deal he did because his attorney told him the Government would give him twenty years to life, career offender status, and a superceding indictment (Motion, ECF No. 37, PageID 113). After the plea was taken and the

---

[1] Because the 115th Congress has adjourned *sine die* and been replaced by the 116th, Senator Grassley will have to reintroduce the bill before it can potentially become law.

3

Presentence Investigation Report was filed, he wanted his attorney to file motions to suppress or to mount "sufficiency challenges," but counsel said he could not because he signed a plea deal. *Id.* Ultimately, he claims that if his counsel had objected to the § 924(c) charge, the court would have understood it did not apply to first offenders. *Id.* at PageID 114.

The Plea Agreement Smedley signed provides that the mandatory minimum sentence for the § 924(c) conviction is five years imprisonment (ECF No. 27, PageID 58). Pursuant to Fed.R.Crim.P. 11(c)(1)(C), Smedley agreed that the sentence actually imposed was an appropriate disposition of the case. As part of the agreed Statement of Facts attached to the Plea Agreement, Smedley admitted he possessed with the intent to distribute the drugs charged in Count One. *Id.* at PageID 65. He also admitted that in "furtherance of said drug trafficking crime," he knowingly and intentionally possessed a loaded firearm. *Id.* at PageID 66. At the plea colloquy on January 22, 2018, Smedley was sworn to answer Judge Rose's questions truthfully. (Hrg. Tr., ECF No. 38, PageID 121.) He admitted the facts set forth in the Statement of Facts. *Id.* at PageID 124, 127. He acknowledged that the Court could impose a sentence of up to twenty years, the term he says his attorney told him the Government was threatening. *Id.* at PageID 129. He admitted his understanding that Count Five carried a mandatory minimum five-year sentence. After an explanation of the rights being waived, Smedley answered that no threats had been made to get him to accept the Plea Agreement. *Id.* at PageID 144.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the

> deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable. Unless a
> defendant makes both showings, it cannot be said that the conviction
> or death sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly
> deferential. . . . A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of counsel=s challenged
> conduct, and to evaluate the conduct from counsel=s perspective at
> the time. Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's
> conduct falls within a wide range of reasonable professional
> assistance; that is, the defendant must overcome the presumption
> that, under the circumstances, the challenged action "might be
> considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding
> would have been different. A reasonable probability is a probability
> sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Smedley has not shown he received ineffective assistance of trial counsel. The Government was in a position to seek a more severe sentence if the case had been tried and

Smedley found guilty. By entering into a Plea Agreement, he prevented that and in fact received the Government's agreement to a five-year sentence, one which the Court imposed although the Advisory Guideline Sentence could have been as high as seventy-one months. His attorney was correct in telling him he could not file post-plea motions to suppress, at least not without withdrawing his plea and exposing himself to more severe punishment. Thus, all the advice he claims his attorney gave him turned out to be good advice.

Much of Smedley's Motion consists of claims he was innocent in that the Government did not possess DNA as to three of the four bags of drugs or two firearms (ECF No. 37, PageID 112). He also claims "[t]here never existed any evidence that petitioner possessed the Mens Rea to use a firearm in the furtherance of a crime of violence nr drug trafficking." *Id.* All of these statements are in direct contradiction to Smedley's sworn statements at the plea colloquy.

A plea of guilty or no contest is valid if, but only if, it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their

> nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady*, 397 U.S. at 755. The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Id.* at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

A court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.*

By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime. *United States v. Broce*, 488 U.S. 563, 570 (1989); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

In taking Smedley's guilty plea, Judge Rose meticulously followed Fed. R. Crim.11 and ascertained that Smedley understood the Plea Agreement, the rights he was giving up, and the consequences of pleading guilty. Having done so, he determined that the plea was knowing,

intelligent, and voluntary, and Smedley never attempted to withdraw the plea, either before or after sentencing.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that Defendant's Motion to Vacate under 28 U.S.C.§ 2255 be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

January 24, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).